FILED
10:00 am, 9/10/25
Margaret Botkins
Clerk of Court

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF WYOMING

PACIFICORP, d/b/a Rocky Mountain Power, an Oregon corporation,

Plaintiff,

vs.

MARY A. THRONE, CHRISTOPHER B. PETRIE, and MICHAEL M. ROBINSON, in their official capacities as Commissioners of the Public Service Commission of Wyoming,

Defendants,

vs.

WYOMING INDUSTRIAL ENERGY CONSUMERS,

Intervenor Defendant.

Case No. 24-CV-101-KHR

**ORDER DENYING DEFENDANTS' MOTION TO DISMISS [78] AND GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [55]**

This matter comes before the Court on Defendants' Motion to Dismiss [ECF No. 78] and Plaintiff's Motion for Summary Judgment [ECF No. 55]. After reviewing the relevant briefing and for the reasons discussed below, this Court denies Defendants' Motion and grants Plaintiff's Motion.

## BACKGROUND

This case arises out of a dispute concerning public utility rates. Plaintiff is a public electric utility company that serves customers in multiple states, including Wyoming. [ECF No. 1, at 4]. Defendants are the Commissioners of the Public Service Commission of Wyoming ("the Commission") which, among other responsibilities, sets retail rates for utilities sold within Wyoming, and the Wyoming Industrial Energy Consumers ("WIEC"). [ECF No. 55, at 6]. On March 1, 2023, Plaintiff submitted an application for a retail rate increase to Defendants. *Id.* As part of its application, Plaintiff provided its estimated net power costs ("NPC") which included "the sum of fuel expenses, wholesale purchase power expenses, and third-party wheeling expenses, less wholesale sales revenue" and is used to determine a reasonable retail rate for the utility company to charge intrastate consumers. *Id.* Plaintiff calculates its NPC using "a forecasting model that simulates the operation of its power system" called the Aurora Model.[1] *Id.* at 12. Generally, a higher NPC creates a higher revenue requirement and therefore a need for higher rates. *Id.*

The Federal Energy Regulatory Commission ("FERC") has exclusive jurisdiction over wholesale and interstate energy transmission and requires utility companies to maintain an Open Access Transmission Tarriff ("OATT") that establishes terms and prices for interstate transmission. In order to support reliable transmission service, FERC further requires public utilities to hold a certain portion of their energy generating capacity in reserve. *Id.* at 7. Because Plaintiff cannot sell these contingency reserves for profit, they

[1] Defendants dispute that the Aurora Model accurately estimated Plaintiff's NPC or was able to accurately account for reserves.

lower revenue for purposes of calculating NPC, which can have the ultimate effect of raising their revenue requirement. [ECF No. 57-8, at 61].

Upon reviewing Plaintiff's application for a rate increase, Intervenor Defendant WIEC objected to Plaintiff's calculations regarding its increased revenue requirement due to the contingency reserves. WIEC provided an adjustment based on the testimony of Bradley Mullins, an independent consultant. [ECF No. 57-6, at 3]. WIEC and Mr. Mullins argued that the inability to sell the reserves meant that Plaintiff incurred significant opportunity costs and that it was unreasonable for Wyoming ratepayers to subsidize other customers. [ECF No. 57-11, at 52]. WIEC suggested that if Plaintiff wished to recover its costs associated with third party reserves, it could do so through its "FERC rates." [ECF No. 57-8, at 65].[2]

Ultimately, WIEC recommended recalculating Plaintiff's NPC so that the modeled cost of third-party reserves to Wyoming consumers was no greater than the costs that Plaintiff recovers from Wyoming residents. *Id.* at 53. The effect of this adjustment was to reduce Plaintiff's NPC by roughly $163 million on a total company basis and by $23.5 million on a Wyoming-allocated basis. [ECF No. 57-12, at 5].

The Commission adopted this adjustment in full, writing that:

> The Commission concludes an adjustment to the third-party reserve costs is appropriate. The Commission finds the testimony of WIEC witness Bradley G. Mullins credible and persuasive. Mr. Mullins argues an adjustment is needed to revalue third-party reserves in NPC in the same manner that FERC

---

[2] Mr. Mullins testified: "It is unreasonable to require ratepayers in Wyoming to subsidize the cost of serving non-native loads and resources, and accordingly the revenue shortfalls above are not reasonably considered in the NPC forecast. If [Plaintiff's] FERC-approved OATT rates are inadequate to recover its cost of serving non-native customers, it would be most appropriate for [Plaintiff] to seek to recover the funds through its FERC rates, not through an increase to Wyoming customers' rates." [ECF No. 57-8, at 65].

> values them. He states this ensures Wyoming PSC-jurisdictional customers do not subsidize FERC-jurisdictional customers. That adjustment, as outlined in WIEC's post-hearing brief, appropriately apportions the costs between FERC jurisdictional customers and Wyoming ratepayers. Accordingly, the Commission adopts his adjustment.

[ECF No. 37-1, at 44].

## RELEVANT LAW

### *I. Law regarding Motion to Dismiss*

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that a party may respond to a complaint with a defense for the "failure to state a claim upon which relief can be granted." In reviewing a 12(b)(6) motion, a court should "accept as true all well-pleaded factual allegations in a complaint in a light most favorable to the plaintiff." *Smith v. U.S.*, 561 F.3d 1090, 1098 (10th Cir. 2009). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citations and quotation marks omitted).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when a plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Plausibility does not equal probability. *Id.* A plaintiff must show more than a sheer possibility that the defendant acted unlawfully, passing the line from speculation or

conceivability to plausibility. *Id.*; *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008). Labels, legal conclusions, and formulaic recitations of the elements are insufficient to survive a motion to dismiss. *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012).

*II. Law regarding Motion for Summary Judgment*

Rule 56 of the Federal Rules of Civil Procedure provides a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgement as a matter of law." A fact is material if it is necessary to determine the outcome of the case. *Roberts v. Jackson Hole Mountain Resort Corporation*, 884 F.3d 967, 972 (10th Cir. 2018). A dispute is genuine if evidence exists that may lead a reasonable trier of fact to return a verdict for the non-moving party. *Olivero v. Trek Bicycle Corporation*, 291 F. Supp. 3d 1209, 1218 (D. Colo. 2017). When determining whether a genuine dispute of material fact exists, a court will draw all favorable inferences of factual ambiguities in favor of the non-movant. *Morlock v. United Parcel Service, Inc.*, No. 08-CV-44, 2008 WL 11411456, at *2 (D. Wyo. Oct. 9, 2008).

If a movant meets their burden in showing that no genuine dispute exists, the non-movant must submit sufficient evidence in specific factual form showing that a dispute does exist. *Id.* This requires more than a scintilla of evidence—providing more than mere assertations and conjecture. *Brennan v. Jackson Hole Snowmobile Tours, Inc.*, No. 08-CV-265, 2009 WL 10700292, at *2 (D. Wyo. Aug. 4, 2009). "[S]ummary judgment is appropriate when the non-movant is unable to present facts on which a reasonable jury could find in his or her favor." *Id.* In sum, summary judgment is an opportunity to

determine the legal sufficiency of a claim to proceed to trial, not to balance or weigh factual disputes.

## RULING OF THE COURT

The issues before the Court are whether the dispute regarding the 2024 Order is now moot given the superseding 2025 Order and whether the adjustment made to Pacificorp's estimated NPC impermissibly interfered with FERC jurisdiction. The Court addresses these issues in turn.

### I. Defendants' Motion to Dismiss

Defendants move to dismiss Plaintiff's suit, arguing that the expiration of the 2024 Order at issue in this case renders Plaintiff's claims moot. Plaintiff opposes this motion, arguing that the suit is not moot because the 2025 Order implicates the same trapped-costs issue, meaning that the central controversy survives the expiration of the 2024 Order. Plaintiff also argues that, even if the issue is moot, it falls under the 'capable of repetition, yet evading review' exception to mootness.

The mootness inquiry centers on "whether granting a present determination of the issues offered. . . .will have some effect in the real world." *Smith v. Becerra*, 44 F.4th 1238, 1247 (10th Cir. 2022). "Mootness is a threshold issue because the existence of a live case or controversy is a constitutional prerequisite to federal court jurisdiction." *Schell v. OXY USA Inc.*, 814 F.3d 1107, 1114 (10th Cir. 2016). Therefore, a court must dismiss an action where any "decision will neither presently affect the parties' rights nor have a more-than-speculative chance of affecting them in the future." *Id.*

Because "[t]he concept of mootness is placed under some strain in the context of administrative orders whose formal legal effect is typically shortlived," several exceptions to the mootness doctrine exist, including where the challenged action is "capable of repetition, yet evading review." *Tenn. Gas Pipeline Co. v. Fed. Power Comm'n*, 606 F.2d 1373, 1379 (D.C. Cir. 1979); *Gannett Co., Inc. v. DePasquale*, 443 U.S. 368, 377 (1979). This exception requires that "(1) the challenged action must be in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there must be a reasonable expectation that the same complaining party will be subjected to the action again." *Fischbach v. N.M. Activities Ass'n*, 38 F.3d 1159, 1161 (10th Cir. 1994) (cleaned up).

The Court finds that the controversy regarding the 2024 Order is not moot. While the Order itself may have been superseded by a new order, the central controversy regarding the alleged imputation of costs appears to be alive and well. Plaintiff continues to allege that Defendants impermissibly ignore third-party reserves and impermissibly trap costs in their 2025 Order. In *Bebchick v. Public Utilities Commission*, the D.C. Circuit confronted the issue of mootness in the context of public utility orders and found that "[a] rate order such as the one before us is not mooted by another which has the effect of keeping the controversy alive." 318 F.2d 187, 189–90 (D.C. Cir. 1963). Similar to the transit rate increase that continued past the original order in *Bebchick*, the dispute over trapped costs survives the expiration of the 2024 Order.

Defendants' opposition on this front appears to depend on the fact that the 2025 Order does not rely on the Aurora Model. Defendants' position misframes both the record and the nature of Plaintiff's Complaint. While there is evidence in the record that the

Commission found faults in the Aurora Model, there is also evidence that the Commission made an adjustment to Plaintiff's NPC based on its belief that Plaintiff's OATT unfairly apportioned costs between Wyoming customers and other ratepayers. Plaintiff's argument is that this adjustment intruded on FERC's exclusive jurisdiction. That is the controversy that apparently survives the expiration of the 2024 Order, and Defendants do not meaningfully explain why these allegations are insufficient in the context of a motion to dismiss. Defendants also cite a string of state cases that have little bearing on the issue before this Court because they do not involve federal preemption.

This finding also helps explain why Plaintiff's claims continue to adequately allege prospective relief for Eleventh Amendment purposes. Plaintiff continues to seek injunctive relief to force Defendants to refrain from adjusting their retail rates using allegedly preempted rationale in the future. *See Edelman v. Jordan*, 415 U.S. 651 (1974); *Milliken v. Bradley*, 433 U.S. 267, 289 (1977) (holding that *Ex Parte Young* "permits federal courts to enjoin state official to conform their conduct to requirements of federal law"); *Kimble v. Solomon*, 599 F.2d 599, 603–04 (4th Cir. 1979). These parties will, annually, go through the process of negotiating rates for Wyoming consumers. Because Plaintiff continues to allege prospective relief, this Court finds that the case is not mooted by the supersession of the 2024 Order.[3]

For similar reasons, the Court finds that the capable of repetition yet evading review exception to mootness applies. Each order is in effect for one year, which is an insufficient

---

[3] To the extent that Defendants argue that the ECAM proceeding, which reconciles estimated NPC and actual NPC at the end of the year, forecloses Plaintiff's claims, the Court fails to understand how a subsequent state proceeding that *may* return some of Plaintiff's losses should have any bearing on a federal court mootness inquiry.

time to fully litigate this issue from the filing of the complaint to a potential trial on the merits. Further, it is quite clear from the parties' filings that the issue regarding trapped costs will continue to rear its head.

Having concluded that this dispute is not moot, the Court denies Defendants' Motion to Dismiss. The Court now moves to consider Plaintiff's Motion for Summary Judgment.

## II. Plaintiff's Motion for Summary Judgment

Turning to the Motion for Summary Judgment, Plaintiff argues that the WIEC and the Commission's adjustment to Plaintiff's estimated NPC impermissibly interfered with FERC-mandated third-party reserves. More specifically, Plaintiff argues that the Commission's order fails to account for the fact that Plaintiff cannot sell its third-party reserves into the market in the way that the WIEC adjustment presupposes pursuant to its "opportunity cost" theory, and that the consequent lowering of Plaintiff's NPC "trapped" Plaintiff's costs.

Defendants contend that the ultimate dispute is about the Aurora model that produced Plaintiff's own estimation of their revenue requirement, which they argue inaccurately forecasted Plaintiff's NPC. Additionally, Defendants argue that the Commission did not interfere with any FERC-approved rates.

Under the Federal Power Act ("FPA"), FERC has "exclusive jurisdiction over wholesale sales of electricity in the interstate market." *Hughes v. Talen Marketing, LLC*, 578 U.S. 150, 150 (2016). In *Montana-Dakota Utilities Co. v. Northwestern Public Service Co.*, the United States Supreme Court held that:

> [T]he right to a reasonable rate is the right to the rate which [FERC] files or fixes, and that, except for review of [FERC's] orders, the courts can assume no right to a different one on the ground that, in its opinion, it is the only or the more reasonable one.

341 U.S. 246, 251–52 (1951). Since *Montana-Dakota*, the "filed-rate" doctrine has operated to invalidate determinations of courts and state utility commissions where their decisions concerning intrastate rates conflict with the authority vested in FERC by Congress. *See Arkansas Louisiana Gas Co. v. Hall*, 453 U.S. 571 (1981); *Nantahala Power and Light Co. v. Thornburg*, 476 U.S. 953, 965 (1986). In short, "[o]nce FERC sets. . . .a rate, a State may not conclude in setting retail rates that the FERC-approved wholesale rates are unreasonable. A State must rather give effect to Congress' desire to give FERC plenary authority over interstate wholesale rates, and to ensure that the States do not interfere with this authority." *Mississippi Power & Light Co. v. Mississippi ex rel. Moore*, 487 U.S. 354, 373 (1988).

While FERC's exclusive jurisdiction exists in the context of wholesale rate-setting, "a utility's costs based upon a FERC-filed rate must be treated as a reasonably incurred operating expense for the purposes of setting an appropriate retail rate." *Nantahala*, 476 U.S. at 967. Furthermore, the filed rate doctrine is not limited to only rates and applies to FERC's decisions regarding interstate wholesale power generally and the costs incurred from compliance with those decisions. *Id.* at 966. In *Nantahala*, the Supreme Court addressed a state commission's order that had concluded that a FERC-approved allocation of wholesale power costs between subsidiaries did not need to be reflected in differing in-state retail rates. In overturning the state supreme court's judgment, the Court held that

"[w]hen FERC sets a rate between a seller of power and a wholesaler-as-buyer, a State may not exercise its undoubted jurisdiction over retail sales to prevent the wholesaler-as-seller from recovering the costs of paying the FERC-approved rate. Such a 'trapping' of costs is prohibited." *Id.* at 970. Because the state commission's order rendered the plaintiff unable to recover its costs associated with the FERC-approved allocation agreement, the Court found that the order violated the Supremacy Clause.

The same issue arises in this case. The Commission's finding that it was unfair for Wyoming retail customers to subsidize FERC-jurisdictional customers reflects their apparent decision that Wyoming retail rates should not be raised to account for the costs of maintaining FERC-mandated third-party reserves. While Defendants associate the Commission's rate increase with a dispute over the Aurora Model used by Plaintiff, the record indicates that WIEC and, by adoption, the Commission thought it unreasonable for Plaintiff to seek to recover its costs incurred due to compliance with FERC requirements. This finding is quite explicitly barred by *Nantahala*, which makes clear that state utility commissions must allow utility companies to recover its costs from such regulations by setting appropriate retail rates.

As observed in *Nantahala*, a state commission is not invariably required to increase retail rates in response to a FERC-approved cost. Such a commission is well entitled to raise rates "if costs *other than* those resulting from the purchases of FERC-regulated power or gas were to decrease." *Id.* at 968 (emphasis in original). Had the Wyoming Commission accepted the costs associated with the federally required maintenance of third-party reserves but concluded, for other reasons, that Plaintiff's estimated NPC was too high, there

would be no preemption issue.[4] However, the evidence here indicates that the Wyoming Commission prevented Plaintiff from recovering its costs associated with the maintenance of third-party reserves on the theory that it was unfair for Wyoming customers to subsidize FERC-jurisdictional customers. Defendants argue that their adjustment adheres more closely to FERC-approved costs than did Plaintiff's estimate, but it is far from clear that this was the motivating factor behind the adjustment. Mr. Mullin's testimony that "[i]f [Plaintiff's] FERC-approved OATT rates are inadequate to recover its cost of serving non-native customers, it would be most appropriate for [Plaintiff] to seek to recover the funds through its FERC rates, not through an increase to Wyoming customer's rates" indicates that the Commission made an adjustment because it was dissatisfied with the allocation of costs between in-state customers and other customers. [ECF No. 57-8, at 65].

This is precisely the reasoning prohibited by *Nantahala* and similar cases. Furthermore, suggesting that Plaintiff's FERC-approved OATT rates might be inadequate seems tantamount to finding that they are unreasonable, which is the essence of state action that the filed rate doctrine was created to prohibit. Because these statements appear on the face of the Commission's Order, the Court finds that there is no genuine dispute of material fact that that aspect of the Order is preempted by federal law. Accordingly, Plaintiff's Motion for Summary Judgment is granted.

[4] The Commission was clearly entitled to find that the Aurora Model overestimated Plaintiff's costs associated with maintaining third-party reserves and adjust their estimated NPC accordingly. The Court expresses no opinion on the reliability of the Aurora Model. However, the Court cannot ignore what appears on the face of the Commission's Order.

## CONCLUSION

The Court finds that the case is not moot and that the Commission's Order as to third-party reserves is preempted by federal law.

IT IS ORDERED that Defendants' Motion to Dismiss [ECF No. 78] is DENIED.

IT IS FURTHER ORDERED that Plaintiff Pacificorp's Motion for Summary Judgment [ECF No. 55] is GRANTED.

IT IS FURTHER ORDERED that Defendants are enjoined from enforcing their ruling regarding third-party reserves in this case or in future rate cases.

Dated this 10th day of September, 2025.

Kelly H. Rankin
United States District Judge